IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

MICHAEL JEROME ANDERSON,

     Plaintiff,

vs.                                                    CASE NO. 1:20-cv-121-GRJ

KILOLO KIJAKAZI,
Acting Commissioner of Social Security[1],

     Defendant.

_____/

## MEMORANDUM OPINION AND ORDER

Plaintiff appeals from a final decision of the Commissioner of Social

Security ("the Commissioner"), denying his application for supplemental

security income ("SSI") benefits for lack of disability under Title XVI of the

Social Security Act ("the Act"). ECF No. 1. The Commissioner has

answered, ECF No. 17, and both parties have filed briefs outlining their

respective positions. ECF Nos. 24, 25. For the reasons explained below,

the decision of the Commissioner is affirmed.

---

[1] In July of 2021, Dr. Kilolo Kijakazi was appointed Acting Commissioner of Social
Security.  The **Clerk** must correct the docket accordingly.

## I.  PROCEDURAL HISTORY

Plaintiff filed his Title XVI application on July 11, 2017, alleging a disability onset date of January 4, 2016, due to high blood pressure and heart problems. R. 170-81.  Plaintiff's claims were denied initially and upon reconsideration.  A hearing was held before Administrative Law Judge ("ALJ") Alisa M. Tapia on February 19, 2019. *See* R. 12-24.  On May 14, 2019, the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 11, 2017 (the date Plaintiff applied for SSI). R. 17.  The ALJ found that Plaintiff has the following severe impairments: morbid obesity, history of ischemic heart disease, and hypertension.  *Id*. The ALJ also found that these impairments, or a combination thereof, do not meet or medically equal the severity of one of the listed impairments. R. 18.

After careful review of the entire record, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work with some limitations:  He can never climb ladders, ropes or scaffolds; he can occasionally kneel, crouch, crawl and climb ramps and stairs; and he should occasionally avoid exposure to pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation.  R. 19.

The ALJ further found that Plaintiff had no past relevant work.  R. 22.

Considering Plaintiff's age, education, work experience, and RFC, the ALJ

determined, relying upon the testimony from a vocational expert, jobs exist

in significant numbers in the national economy that Plaintiff can perform,

such as cafeteria attendant, cleaner housekeeper, and folder.  R. 24.  In

light of these findings, the ALJ determined that Plaintiff has not been under

a disability, as defined in the Act, since July 11, 2017.  R. 25.

The Appeals Council denied review.  R. 1-3.  This appeal followed.

Plaintiff asserts two related issues for review.  First, Plaintiff says that the

ALJ erred by failing to develop the record with opinion evidence regarding

Plaintiff's RFC.  Second, because no opinion evidence as to Plaintiff's RFC

exists in the record, Plaintiff argues that the ALJ erred by not ordering a

consultative examination before making the RFC determination.

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by

substantial evidence. *See* 42 U.S.C. § 405(g) (2012). Substantial evidence

is more than a scintilla, *i.e.*, the evidence must do more than merely create

a suspicion of the existence of a fact and must include such relevant

evidence as a reasonable person would accept as adequate to support the

conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing*

*Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen,* 793 F.2d 1177 (11th Cir. 1986) (finding that the court must also consider evidence detracting from evidence on which the Commissioner relied). However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1) (2012); 20 C.F.R. §§ 404.1505, 416.905 (2015). The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511, 416.905–416.911.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). First, if a claimant is working at a substantial gainful activity, he is not disabled. §§ 404.1520(b), 416.920(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. §§ 404.1520(c), 416.920(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. §§ 404.1520(d), 416.920(d). Fourth, if a claimant's impairments do not prevent him from

doing past relevant work, he is not disabled. §§ 404.1520(e)-(f),

416.920(e)-(f). Fifth, if a claimant's impairments (considering his RFC, age,

education, and past work) prevent him from doing other work that exists in

the national economy, then he is disabled. §§ 404.1520(g), 416.920(g).

The burden of proof regarding the plaintiff's inability to perform past

relevant work initially lies with the plaintiff.  *Walker v. Bowen*, 826 F.2d 996,

1002 (11th Cir. 1987); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th

Cir. 2001).  The burden then temporarily shifts to the Commissioner to

demonstrate that "other work" which the claimant can perform currently

exists in the national economy.  *Doughty*, 245 F.3d at 1278 n.2.[2]

---

[2] In *Doughty*, the Eleventh Circuit Court of Appeals explained the burden shifting
process as follows:

> In practice, the burden temporarily shifts at step five to the Commissioner.
> The Commissioner must produce evidence that there is other work
> available in significant numbers in the national economy that the claimant
> has the capacity to perform.  In order to be considered disabled, the
> claimant must then prove that he is unable to perform the jobs that the
> Commissioner lists.  The temporary shifting of the burden to the
> Commissioner was initiated by the courts, and is not specifically provided
> for in the statutes or the regulations.

*Doughty*, 245 F.3d at 1278 n.2.

## III.  SUMMARY OF THE RECORD

Because Plaintiff's appeal focuses on the ALJ's treatment of the evidence pertaining to his RFC, the Court's discussion focuses on the records the ALJ considered in making her RFC determination.

### A.  Medical Evidence

Prior to applying for SSI, Plaintiff presented to the emergency department ("ER") at Capital Regional Medical Center ("CRMC") in Tallahassee, Florida on three occasions between 2015 to 2016.  *See* R. 271-286, 287-318, 319-339.[3]  At those visits, Plaintiff was diagnosed with exacerbation of congestive heart failure, hypertension, and morbid obesity. R. 273.  Notwithstanding these diagnoses, Plaintiff has a history of chronic noncompliance and continued to smoke 1/3 pack of cigarettes per day, as he had done for 18 years.  R. 296, 300.  In August of 2016, an echocardiogram showed Plaintiff's heart had an ejection fraction ("EF") of 20-25%. R. 293.  Plaintiff also presented to the ER during this time frame, complaining of swollen lower legs.  R. 291-92.  The swelling intensified such that Plaintiff required hospitalization and surgery to prevent necrosis. R. 296-98, 307-08.

---

[3] During these visits, Plaintiff primarily complained about an ulcer on his foot and swelling in his lower legs. *See* R. 272, 273, 293.

After Plaintiff applied for SSI, Plaintiff returned to the ER six times from July 2017 to August 2018.  Each time, Plaintiff was examined and released as follows:

In July of 2017, Plaintiff complained of mild abdominal pain and bilateral lower leg swelling, and he requested a refill for his hypertension medication. R. 403-12, 405.

On August 30, 2017, Plaintiff complained of mild abdominal pain and leg swelling.  R. 380-89.  He reported injuries sustained while doing heavy lifting at work.  R. 380, 382.  On examination, Plaintiff's left testicle was swollen, and he had edema in his legs.  R. 385-86.  All other examination findings were generally normal with no motor or sensory deficits.  R. 386.

In February of 2018, Plaintiff was admitted to the hospital for treatment for pneumonia and subsequently released.  R. 517-23, 529-31, 537.

In April of 2018, Plaintiff complained of shortness of breath. R. 481-87.  Normal cardiovascular findings were noted at the time.  R. 485.

In June of 2018, Plaintiff complained of shortness of breath, leg swelling, and mild pulmonary congestion. R. 444-49, 465-67.  An EF of 20-25 percent was noted. R. 448.

In August of 2018, Plaintiff returned for a pacemaker check.  R. 429-32.  During this visit, Plaintiff reported no symptoms related to his pacemaker, yet he admitted that he continued to smoke cigarettes. R. 429.  On examination, Plaintiff had normal cardiovascular findings and was diagnosed with mild cardiomegaly with no acute pathology.  R. 426, 434 & 441.   Plaintiff denied both chest pain and shortness of breath.  R. 430.

At the initial review stage, the Agency decisionmaker determined that there was insufficient evidence to evaluate Plaintiff's claims, and thus found that Plaintiff was not disabled. R. 70-76.  The decisionmaker noted the absence of any medical opinion from any medical source in the record and found no RFC assessments associated with Plaintiff's claim.  R. 75.  The agency also concluded that a consultative examination was not required. R. 73.

Upon reconsideration, Dr. Thomas Lawhorn ("Dr. Lawhorn"), a state agency physician, reviewed Plaintiff's medical evidence and concluded the claim should be closed due to insufficient evidence.  R. 79-86.  Dr. Lawhorn did find, however, that Plaintiff's hypertension and ischemic heart disease were severe impairments, based on available records at the time.  R. 84.  Dr. Lawhorn further noted that no medical opinion from any medical source was present in the record, nor was there any RFC assessment associated

with Plaintiff's claims.  R. 85.  Dr. Lawhorn further noted that attempts to

reach Plaintiff were unsuccessful and that Plaintiff had "failed to cooperate."

R. 83.  Dr. Lawhorn also determined that a consultative examination was

not required in this case.  R. 82.

At the hearing level, additional evidence was provided, as

summarized by the ALJ.  The new evidence included updated medical

records and Plaintiff's testimony regarding both his work history and his

present symptoms.

### B.  Hearing Testimony

At the time of the hearing, Plaintiff was 48 years old.  He was 6'6" tall

and weighed 425 pounds.  R. 34.  Plaintiff had a college degree in

accounting and lived at his deceased grandmother's home.  R. 36-37, 35.

Plaintiff reported past work as a manager, cashier, security guard and fast-

food worker.  R. 37-46.  At the hearing, Plaintiff was represented by

counsel.  Plaintiff's counsel confirmed that he had reviewed the record and

that he had no objections or additional submissions.  R. 33.  During the

hearing, Plaintiff's counsel did not raise any issue regarding missing

evidence or the need to develop additional evidence.  *See* R. 32-35, 56-59,

68-69.

Plaintiff testified at the hearing as follows:  he experiences shortness of breath and cannot lift twenty pounds, R. 47; his legs go numb while sitting and he cannot sit for an eight-hour shift, R. 48; everything hurts all day, R. 50; he can walk twenty to twenty-five feet before he becomes winded, so he must sit three to five minutes before he can get up again, R. 53; he rides in an electronic cart at Walmart and sits on a stool in the shower, R. 55-56; he can sit for fifteen to twenty minutes before he needs to stretch his legs, R. 53; he lies down once or twice a day for an hour or two to ease the swelling in his legs, R. 57; and that he must elevate his legs above his heart for at least an hour or two every day, R. 57-58. Plaintiff also testified that he continues to smoke seven to eight cigarettes per day.  R. 51.

The vocational expert ("VE") also testified at the hearing.  R. 59-69. The VE testified that Plaintiff's prior jobs were performed at a light exertional level.  R. 60.  The VE thus opined that, given Plaintiff's present limitations, he still could return to his four prior positions as manager, cashier, security guard, or fast-food worker.   R. 61.  The ALJ posited that, were she to find no prior work, were there other jobs a person could perform with Plaintiff's limitations?  R. 62.  The VE affirmed that other jobs in the national economy such as cafeteria attendant, cleaner/housekeeper,

and folder would apply.  *Id*.  Claimant's counsel examined the VE as well.

R. 68-69.  During that examination, the VE testified that work would be

precluded for an individual who must raise their legs over their waist for up

to two hours per day.  R. 68-69.

## IV.  DISCUSSION

### A.    The Fourth Step: ALJ's Assessment of Claimant's RFC

At the fourth step, the ALJ must make an assessment of the

claimant's RFC. *Castle v. Colvin*, 557 F. App'x 849, 852 (11th Cir. 2014)

(per curiam) (*citing Phillips v. Barnhart,* 357 F.3d 1232, 1238 (11th Cir.

2004)). The RFC is an assessment, based on all relevant medical and

other evidence, of a claimant's remaining ability to work despite his

impairment. *Id.* (*citing Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th

Cir.1997)). The claimant is responsible for providing medical evidence

demonstrating an impairment and how severe the impairment is during the

relevant time-period. *See* 20 C.F.R. § 404.1512(a). If a claimant's

impairment does not meet or equal a listed impairment, the Agency will

assess and make a finding about a claimant's RFC "based on all the

relevant medical evidence in [the] case record."  20 C.F.R. § 404.1520(e).

A claimant who is seeking to establish a disability based on subjective

testimony of pain and other symptoms "must satisfy two parts of a three-

part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart,* 284 F.3d 1219, 1225 (11th Cir. 2002). *See also Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005).

At the administrative hearing, the burden rests with the claimant to prove that he is disabled. *See Castle*, 557 F. App'x at 853. "The ALJ has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the ALJ to make an informed decision." *Id.* (quoting *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007) (internal quotation marks omitted). In *Castle*, the district court, relying on *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 17 (1st Cir. 1996), concluded that the ALJ erroneously "played doctor" in assessing Plaintiff's RFC when he should have ordered a consultative examination instead. The district court reached that conclusion because the record was devoid of any objective medical evidence confirming the severity of Plaintiff's alleged knee pain. The Eleventh Circuit reversed. "Contrary to the district court's reasoning, the ALJ did not "play doctor" in assessing [Plaintiff's]

RFC, but instead properly carried out his regulatory role as adjudicator responsible for assessing [Plaintiff's] RFC."  *Castle*, 557 F. App'x at 853 (*citing* and quoting from 20 C.F.R. § 1545(a)(3)).   The Court of Appeals explained that "the pertinent regulations state that the ALJ has the responsibility for determining a claimant's RFC."  *Castle*, 557 F. App'x at 853.  The Court also distinguished *Castle* from *Manso-Pizarro,* which had ruled that an ALJ is not qualified to interpret raw data in a medical record. *Castle*, 557 F. App'x at 854.  The medical records at issue in *Manso-Pizarro* were far more complicated than those at issue in the *Castle* case. *Id*.  Even the *Manso-Pizarro* Court noted an exception to its holding: "'Where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment.'"  *Castle*, 557 F. App'x at 854 (quoting *Manso-Pizarro*, 76 F.3d at 854).

The *Castle* Court concluded that the ALJ in that case properly carried out his regulatory role in determining Plaintiff's RFC, and that the ALJ's RFC finding was supported by substantial evidence.  *Id*.

### B.    Consultative Examinations & Full and Fair Record

In developing the record, the ALJ must order a consultative examination or obtain medical evidence or expert testimony where the

record contains insufficient evidence for the ALJ to make an informed decision. *See Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999). An ALJ, however, is not required to order medical evidence to complete the record unless the record establishes that supplementation is necessary to enable the ALJ to render her decision.  *Holladay v. Bowen*, 848 F.2d 1206 (11th Cir. 1988); *Kelly v. Heckler*, 761 F.2d 1540, 1540 (11th Cir. 1985). Additionally, a consultative examination may be required in situations where the ALJ needs to resolve some conflict, ambiguity, or other insufficiency in the medical evidence.  20 C.F.R. §§ 404.1519(a)(2) ("When we purchase a consultative examination, we will use the report from the consultative examination to try to resolve a conflict of ambiguity if one exists.  We will also use a consultative examination to secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision."), 404.1519a(b) ("A consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim.").

Finally, "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development

of the record." *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997)

(*citing Brown v. Shalala*, 44 F.3d 931, 934–25 (11th Cir. 1995)). Prejudice

has been found when the record "has evidentiary gaps which result in

unfairness or 'clear prejudice.'" *Brown*, 44 F.3d at 935 (quoting *Ware v.*

*Schweiker*, 651 F.2d 408 (5th Cir. Unit A July 1981)).

### C.   ALJ's RFC Finding Based on Fully and Fairly Developed Record; No Consultative Examination Was Required

Plaintiff argues that because the ALJ discounted Dr. Lawhorn's report

as unpersuasive, the ALJ should have ordered a consultative examination

regarding Plaintiff's RFCs.  ECF No. 24 at 9-11.  Plaintiff further contends

that remand is required because no opinion evidence exists in this record

to support the ALJ's RFC determination.  The Court concludes, however,

that a vast amount of objective medical evidence in the record, spanning

many years, provides substantial support for the ALJ's RFC determination.

In assessing Plaintiff's RFC, the ALJ followed the correct two-step

inquiry.  First, the ALJ determined whether there was an underlying

medically determinable physical impairment that can be shown by medical

opinion(s) and prior administrative medical finding(s) in accordance with the

requirements of 20 C.F.R. § 416.920c.  In the case at hand, the ALJ

determined that Plaintiff's medically determinable impairments of ischemic

heart disease, hypertension and morbid obesity could reasonably be

expected to cause Plaintiff's alleged symptoms.  R. 19.  Second, the ALJ

evaluated the intensity, persistence, and limiting effects of Plaintiff's

symptoms to determine the extent to which they limit Plaintiff's functional

capacity.  *Id.*  Here, the ALJ concluded that Plaintiff's statements

concerning the intensity, persistence, and limiting effects of his symptoms

were not entirely consistent with the medical evidence or other evidence in

the record as discussed below.  R. 20.

     1.   <u>ALJ's review of the objective medical evidence</u>.

The ALJ reviewed all of Plaintiff's visits to the ER on a number of

occasions over several years.  Imaging of his heart during those visits

revealed only mild to moderate results.  R. 20.   Also, although an

echocardiogram in August of 2016 showed an EF of 20-25%, only mild

cardiomegaly was noted at the time.  *Id*.  Follow-up imaging in November of

2016 revealed no acute chest disease and dilated cardiomyopathy.  *Id*.

Further, a chest x-ray and imaging taken on three occasions in 2018

revealed no acute cardiopulmonary pathology, only mild cardiomegaly.  *Id*.

And, even though Plaintiff also complained, on occasion, of shortness of

breath, he generally denied symptoms such as orthopnea, palpitation,

dizziness, blurred vision, and syncopal attaches.  *Id*.; see R. 465.

Moreover, several references to non-compliance with medication, cigarette-

smoking, and motorcycle riding are found in within the record.  R. 21, 405,

429.  Finally, Plaintiff's cardiovascular screenings were generally normal

throughout the record with normal heart sounds, no murmur, and a normal

heart rate and rhythm.  *Id*.

Accordingly, the ALJ concluded that the objective medical records did

not support Plaintiff's allegations regarding the intensity, persistence, and

limiting effects of his symptoms.

    2.    <u>ALJ's consideration of Plaintiff's hearing testimony</u>.

In looking at Plaintiff's hearing testimony, the ALJ noted that Plaintiff

takes prescription medications and over the counter pain medication to

alleviate his symptoms, and that elevating his legs also helps.  R. 20.  The

ALJ found that Plaintiff's "mild to moderate results do not correspond well

to the [Plaintiff's] extensive allegations in this case."  *Id*.  Also, despite

Plaintiff's testimony regarding his substantial exertional limitations, the

objective medical evidence revealed otherwise.[4]  For example, Plaintiff

reported injuries sustained while performing heavy lifting just one month

after he applied for SSI. *See* R. 380, 382.  As to Plaintiff's testimony that he

has been unable to work since January 2016, the record shows that

---

[4] The ALJ specifically found that Plaintiff's testimony was inconsistent with the medical
evidence in the record, and she further expressed doubt as to its veracity.  R. 21.

Plaintiff's heavy-lifting injury was sustained while he was at work at Mike's Bikes in August of 2017.  *Id*.  Finally, Plaintiff testified that he had not driven in years because of his inability to sit for long periods of time.  R. 21.  Yet, after the hearing, the ALJ observed Plaintiff "hop onto and drive away in his- *at least 800 pound*- cruiser motorcycle."  *Id*. (emphasis in original).

      3.    <u>ALJ's consideration of Dr. Lawhorn's opinion evidence</u>.

In evaluating Dr. Lawhorn's opinion evidence, the ALJ properly applied the new medical regulations as Plaintiff applied for SSI after March 27, 2017.  R. 21-22.  The ALJ found Dr. Lawhorn's conclusion that the evidence in the record was insufficient to determine disability to be unpersuasive. R. 22. That was because Dr. Lawhorn did not have access to updated medical records and Plaintiff's own testimony about his work history and normal daily activities that were available at the hearing level, along with the VE testimony.  *Id*.  The ALJ did, however, accept Dr. Lawhorn's finding that Plaintiff has severe impairments of hypertension and ischemic heart disease as that finding was consistent with a 2016 echocardiogram and a 2017 chest X-ray.  *See* R. 17.

So, after reviewing the objective medical evidence, the hearing testimony, and Dr. Lawhorn's report, the ALJ determined that Plaintiff has

the RFC to perform light work subject to enumerated limitations (which is a very low bar, indeed).

Upon careful review of the record in this case, this Court concludes that the ALJ's RFC determination is supported by substantial evidence. Additionally, Plaintiff has not pointed to any conflict in the record that warranted a consultative examination,[5] and Plaintiff has not demonstrated any evidentiary gaps that result in unfairness or prejudice.

In sum, the ALJ had plenty of objective medical records regarding Plaintiff's medical conditions to make an informed decision as to his RFC. *See Castle* 557 F. App'x at 854 ("Where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functioning capacity even without a physician's assessment.") (quoting *Manso-Pizarro* 76 F.3d at 17).

## V.  CONCLUSION

In view of the foregoing, it is **ORDERED** that the decision of the Commissioner is **AFFIRMED**.

---

[5] It is worth noting once again that Dr. Lawhorn determined that a consultative examination was not required in this case.

**DONE AND ORDERED** on the 24th day of November 2021.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

.